**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| JARIUS B.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22-cv-748-SLS |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of the | ) | |
| Social Security Administration,[2] | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## **MEMORANDUM OPINION**

In this action, Plaintiff Jarius B. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny his Title II application for disability insurance benefits. The matter comes before the Court on cross-motions for summary judgment. (ECF Nos. 11, 12, 16.) The motions have been fully briefed, rendering this matter ripe for disposition. (ECF Nos. 11, 12, 13, 16). The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 2, 19, 20.)

Plaintiff requests that the Commissioner's decision be reversed and remanded with instructions to grant disability benefits. (Plaintiff's Memorandum Supporting His Motion for Summary Judgment (ECF No. 13) ("Pl.'s Mem.") at 15.) As the basis for such relief, Plaintiff

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

argues that the Administrative Law Judge ("ALJ") erred by: (1) failing to consider and afford weight to Plaintiff's Veterans Affairs ("VA") disability rating; (2) requiring objective medical support to validate Plaintiff's subjective statements of symptoms and inadequately explaining why he found Plaintiff had minimal limitations in concentration, pace, and persistence; and (3) failing to analyze the opinion of Ahmed Koako, M.D. ("Dr. Koako") in accordance with correct legal standards.  (Pl.'s Mem. at 1-3.)  In response, the Commissioner contends that the ALJ properly considered the underlying VA records in accordance with applicable law and that substantial evidence supports the ALJ's residual functional capacity ("RFC") assessment, including his consideration of the opinion of Dr. Koako.  (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 16) ("Def.'s Mem.") at 8-20.)  Therefore, the Commissioner argues, the decision should be affirmed.  (Def.'s Mem. at 21.)

For the reasons set forth below, the Court determines that: (1) the ALJ complied with applicable regulations and controlling precedent from the United States Court of Appeals for the Fourth Circuit in his consideration of Plaintiff's VA records; (2) substantial evidence supports the ALJ's RFC determination, and the ALJ applied correct legal standards in conducting the same, including in assessing Plaintiff's subjective statements and limitations from Plaintiff's mental impairments; and (3) the ALJ applied the correct legal standards in analyzing the medical opinion of Dr. Koako, and substantial evidence supports his findings.  Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF Nos. 11, 12), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 16), and AFFIRM the final decision of the Commissioner.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on February 1, 2021, alleging disability beginning on January 6, 2021.  (Administrative Record ("R.") at 15, 60, 80, 167, 178.)[3] In his application, Plaintiff alleged that he suffered from post-traumatic stress disorder ("PTSD"), insomnia, sleep apnea, and "anxiety with depression."  (R. at 181.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 60, 80, 82-83, 86-89.)  Plaintiff requested a hearing before an ALJ, and one was held on August 11, 2022.  (R. at 31-59, 98-100.)

On August 29, 2022, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Social Security Act ("the Act") from the alleged onset date to the date of the decision.  (R. at 15-24.)  On September 30, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-4.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his past employment given the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his limitations preclude him from performing his past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue,* 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION[4]

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 15-24.)  *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 6, 2021 (the alleged onset date).  (R. at 17.)  At step two, the ALJ determined Plaintiff suffered from the severe impairments of degenerative disc disease, depression, obesity, and PTSD.  (R. at 17-19.)

At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 17-19.)  In considering the severity of Plaintiff's mental impairments, the ALJ found among other things that those impairments, considered alone and in combination, did not meet or medically equal the requirements of any listing because Plaintiff did not satisfy the "paragraph B" criteria.  (R. at 18.)  "To satisfy the 'paragraph B' criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning," with an extreme limitation indicating "the inability to function independently, appropriately, or effectively, and on a sustained basis" and a marked limitation showing a "seriously limited ability" to do the same.  (R. at 18.)

Although Plaintiff claimed to have difficulty following instructions, completing tasks, and remembering in general, the ALJ noted that Plaintiff also stated he could prepare meals, pay bills, go to doctor's appointments, and take medications and that the record showed Plaintiff could relay information about his health.  (R. at 18.)  Therefore, the ALJ found Plaintiff exhibited no more than mild limitations in understanding, remembering, or applying information.  (R. at 18.)  The

---

[4] Because Plaintiff's assignments of errors are limited to the ALJ's conclusions regarding his mental impairments and resulting limitations, the Court largely limits its discussion of the ALJ's decision to Plaintiff's mental health condition.

ALJ found moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. at 18.) In so finding, the ALJ acknowledged that Plaintiff reported difficulties in these functional areas but also considered Plaintiff's statements as to his abilities to get along with others, shop, prepare meals, manage funds, handle his own medical care, and handle self-care and personal hygiene, as well as records showing Plaintiff's good rapport with providers, appropriate grooming and hygiene, and no issues with temper control. (R. at 18.) The ALJ found that the record supported mild or moderate, not marked or extreme, limitations in these areas of mental functioning. (R. at 18.)

The ALJ then conducted Plaintiff's RFC assessment. (R. at 19-22.) Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can only frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but can never climb ladders, ropes, or scaffolds; he can frequently handle, finger, and reach with his right dominant upper extremity; he can have no exposure [to] hazards such as unprotected heights or moving mechanical parts, and cannot perform work involving driving a motor vehicle; he can understand, remember and carry out simple instructions and make simple work related decisions, and can work at a consistent pace throughout the workday, but not at a production rate pace where tasks must be performed quickly, such as on an assembly line or conveyor belt; he can tolerate occasional interaction with coworkers and supervisors, with no public contact or tandem work tasks; and he can tolerate occasional changes in routine work setting, but should have very little independent decision-making with no responsibility for the safety of others.

(R. at 19.) The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 19.)

At the hearing, Plaintiff stated he could not work because of "frequent flashbacks and poor sleep" due to his experiences while in the armed forces. (R. at 20.) Plaintiff does not drive because

he experiences flashbacks of an incident involving an improvised explosive device ("IED").  (R. at 20.)  Plaintiff further testified to having difficulty concentrating due to flashbacks and loud noises and not getting along well with others due to poor communication.  (R. at 20.)  While the ALJ determined that Plaintiff's impairments could reasonably be expected to cause these alleged symptoms, he also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 20.)

The ALJ acknowledged Plaintiff's history of PTSD and depression, for which he received treatment with outpatient medication and therapy.  (R. at 20.)  The ALJ noted that while Plaintiff "continues to complain of symptoms of these conditions … there is no indication in the record of any acute exacerbations" of his symptoms that "did not resolve without inpatient hospitalization or other emergency treatment."  (R. at 20.)  Function reports and records pertaining to Plaintiff's functional capacity showed that Plaintiff "retain[ed] his general independence aside from an inability to drive comfortably" due to flashbacks.  (R. at 20.)  Specifically, Plaintiff "retain[ed] the ability to prepare simple meals, perform simple household chores, shop, and manage his own medical care despite his conditions, and treatment providers indicate the [Plaintiff] remains independent in activities of daily living."  (R. at 20.)  Records also indicated that Plaintiff could walk up to 10 miles a day for recreation and play basketball with his brother.  (R. at 20.)  In addition, examinations showed "occasional impairments in mood and concentration" but otherwise reflected "normal mental status."  (R. at 20.)  Accordingly, the ALJ determined that Plaintiff's "PTSD and depression cause the understanding, interaction, and concentration limitations noted above," previously identified to be mild or moderate, "as well as [Plaintiff's] inability to operate a motor vehicle in a work environment."  (R. at 21.)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. at 19.) Among other opinions discussing physical limitations, the ALJ considered the opinions of state agency psychological consultants Howard Leizer, Ph.D. ("Dr. Leizer") and Leslie Montgomery, Ph.D. ("Dr. Montgomery"). (R. at 21.) Drs. Leizer and Montgomery found Plaintiff moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for long periods, perform activities within a schedule, maintain regular attendance and be punctual, work in coordination with or in proximity to others, complete a normal workday or workweek without interruptions, perform at a consistent pace without the need for an unreasonable number of breaks, interact appropriately with the general public, accept instructions and respond to supervisor criticism, get along with others, and respond appropriately to changes in a work setting. (R. at 21.) The ALJ found these opinions to be persuasive, as they were "generally consistent with the record evidence, which establishes that [Plaintiff's] mental impairments are generally controlled with medication, but continue to cause some difficulties in concentration, interaction, and dealing with stress," and "supported by Dr. Leizer's and Dr. Montgomery's careful review of the record evidence." (R. at 21.)

Next, the ALJ found the opinion of Daniel Camden, M.D. ("Dr. Camden"), a state agency medical consultant, to be unpersuasive. (R. at 21.) According to Dr. Camden, Plaintiff had no severe medically determinable mental impairments. (R. at 21.) The ALJ determined that this opinion was inconsistent with the record evidence, which showed "significant ongoing mental impairment symptoms despite consistent treatment," and "made without reference to a significant number of the records available at the hearing level." (R. at 21.)

The ALJ also reviewed the medical opinion of Dr. Koako.  (R. at 21-22.)  Dr. Koako opined that Plaintiff had marked limitations in numerous areas of mental functioning, including in his ability to remember and understand work-like procedures and detailed instructions, maintain attention and concentration for extended periods, maintain regular attendance and schedules, and work with others.  (R. at 22.)  The ALJ found those conclusions unpersuasive because Dr. Koako's determinations "appear to be based on [Plaintiff's] statements regarding his limitations, not based on objective examination of [Plaintiff], and his assessment form is not generally consistent with the mental status examinations in the record, which do not establish ongoing limitations at a marked level despite treatment and instead indicate that [Plaintiff's] condition is generally stable with treatment."  (R. at 22.)

Lastly, the ALJ considered the opinion from treatment provider Mohammad Javed, M.D. ("Dr. Javed").  (R. at 22.)  Dr. Javed indicated in a July 2021 letter that Plaintiff had difficulty interacting with others and was unable to work.  (R. at 22.)  The ALJ found this unpersuasive because Dr. Javed failed to support his conclusion regarding Plaintiff's ability to interact with others and then offered "an opinion on an issue reserved to the [C]ommissioner," *i.e.*, whether Plaintiff is able to work, without providing any "significant particularity" or support for his conclusion.  (R. at 22.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a firefighter or occupational inspector.  (R. at 22.)  As for vocational factors, the ALJ determined that Plaintiff has at least a high school education and met the definition of a younger individual age 18-46 at the alleged onset date.  (R. at 23.)

At step five, the ALJ concluded, based on the VE's testimony, that Plaintiff could perform jobs that exist in significant numbers in the national economy considering his age, education, work

experience, and RFC.  (R. at 23-24.)  The ALJ adopted the VE's testimony that Plaintiff could

perform the jobs of router, housekeeping cleaner, and marker and found Plaintiff not disabled from

January 6, 2021 through August 29, 2022.  (R. at 23-24.)

## IV.    ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must

determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings

are supported by substantial evidence.  *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340).  "In

reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."

*Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).  Consequently, as long as the judgment is

explained and supported by substantial evidence, this Court must accept the Commissioner's

decision, even if this Court would reach an opposite conclusion or weigh the evidence differently

if it were conducting a *de novo* review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456

(4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30,

2011).  The Court considers Plaintiff's assignments of error with this standard of review in mind.

### A. The ALJ Did Not Err by Failing to Discuss or Give Substantial Weight to the VA's Disability Rating

Plaintiff first argues that the ALJ erred by failing to consider and afford substantial weight

to the VA's 100% disability rating.  (Pl.'s Mem. at 6-8.)  Specifically, Plaintiff contends that Fourth

Circuit precedents require an ALJ to consider and discuss a VA disability determination and to

provide detailed justifications for choosing not to give such determination substantial weight.

(Pl.'s Mem. at 6-8 (citing *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018); *Bird v. Comm'r*

*of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012); *DeLoatche v. Heckler*, 715 F.2d 148, 150

& n.1 (4th Cir. 1983)).)  In doing so, Plaintiff acknowledges that the SSA's revised regulations as

11

to treatment of other agency determinations applies to this case and that a then-pending case in the Fourth Circuit would likely clarify whether the precedents cited by Plaintiff survived the change in SSA regulations.  (Pl.'s Mem. at 5 n.1.)  In response, the Commissioner points out that the Fourth Circuit *did* resolve such issue after Plaintiff filed his motion and rejected the same argument made herein by Plaintiff.  (Def.'s Mem. at 9-10 (citing *Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023)).)  The Court agrees that the Fourth Circuit's decision in *Rogers* forecloses Plaintiff's argument.

Under SSA's revised regulations, applicable to claims such as Plaintiff's filed on or after March 27, 2017, a decision by the VA as to whether an individual is disabled is "based on its rules" and is therefore "not binding" on the SSA.  20 C.F.R. § 404.1504.  The regulation provides that the SSA:

> will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.  However, [the SSA] will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the SSA] receive[s] as evidence in your claim . . . .

*Id.*  In the *Rogers* decision, the Fourth Circuit concluded that its "precedents do not trump the new SSA rules."  62 F.4th at 879.  Therefore, "the new rules supersede [Fourth Circuit] precedents and thus apply to claims filed on or after March 27, 2017."  *Id.*

Considering 20 C.F.R. § 404.1504 and pursuant to 20 C.F.R. § 404.1520b(c)(1), as well as *Rogers*, the ALJ did not err by failing to discuss the VA's disability rating or accord it substantial weight.  Moreover, the ALJ considered the underlying evidence, which included VA record

information, when arriving at its determination in accordance with 20 C.F.R. §§ 404.1504, 404.1513(a)(1)-(4). Thus, the ALJ applied correct legal standards in determining Plaintiff's claim.

**B. Substantial Evidence Supports the ALJ's RFC Determination, and the ALJ Applied Correct Legal Standards in Conducting the Same**

*1. The ALJ Properly Assessed Plaintiff's Subjective Reports of Symptoms*

In challenging the RFC determination, Plaintiff first contends "that the ALJ improperly increased his burden of proof by requiring objective evidence to validate [his] subjective complaints from mental health conditions . . . ." (Pl.'s Mem. at 5.) The ALJ's decision shows otherwise.

The regulations provide for a two-step process in evaluating Plaintiff's subjective complaints in the disability determination. 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p). Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* The ALJ must consider all available evidence in this determination, including objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of the symptoms, and medical opinions and statements from others. *Id.* The claimant does not need to produce objective evidence to satisfy this second prong. *Id.*

Indeed, the Fourth Circuit has found that claimants are allowed to rely entirely on subjective evidence of pain to demonstrate sufficient persistence and severity. *See Arakas*, 983 F.3d at 96; *see also Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360-61 (4th Cir. 2023).

The Fourth Circuit explained that by discrediting a plaintiff's complaints based on the lack of objective medical evidence corroborating them, an ALJ improperly increases the plaintiff's burden of proof. *Arakas*, 983 F.3d at 96; *Shelley C.*, 61 F.4th at 362. In *Shelley C.*, the Fourth Circuit determined that the ALJ erred in dismissing the claimant's "subjective complaints based *entirely* upon the belief that they were not corroborated by the record's medical evidence." 61 F.4th at 360 (emphasis in original). Specifically, the Court held that ALJs cannot "rely upon the absence of objective medical evidence to discredit 'a claimant's subjective complaints regarding symptoms of fibromyalgia or *some other disease that does not produce such evidence*,'" such as "chronic depression." *Id.* at 361 (quoting *Arakas*, 983 F.3d at 97) (emphasis in original).[5]

Here, the ALJ followed the two-step process and complied with Fourth Circuit precedent regarding the same. At the first prong, the ALJ found that Plaintiff's medically determinable impairments could lead to the alleged symptoms. (R. at 20.) And at the second prong, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 20.)

Contrary to Plaintiff's argument (Pl.'s Mem. at 9), the ALJ did not dismiss Plaintiff's subjective complaints based on the absence of objective medical evidence. Instead, the ALJ identified inconsistencies between the Plaintiff's subjective complaints and Plaintiff's stated capabilities, activities of daily living, Plaintiff's treatment history, and mental status examinations. (R. at 18-21.) Specifically, the ALJ found that: (1) Plaintiff treated his PTSD and depression with

---

[5] Plaintiff argues that PTSD qualifies as "'*some other disease that does not produce such evidence*'" under the *Shelley C.* decision. 61 F.4th at 362 (quoting *Arakas*, 983 F.3d at 97) (emphasis in original). (*See* Pl.'s Mem. at 9-10.) The Court declines to decide this issue because as discussed below, the ALJ weighed Plaintiff's subjective complaints appropriately as required by *Shelley C.* and *Arakas* in any event.

outpatient medication and therapy and the record contained no acute exacerbations of symptoms that required inpatient hospitalization or other emergency treatment; (2) function reports and treatment records pertaining to Plaintiff's functional capacity showed that Plaintiff retained his general independence aside from an inability to drive comfortably; (3) treatment providers noted occasional impairments in mood or concentration but otherwise generally normal mental status; and (4) Plaintiff could prepare simple meals, perform simple household chores, pay bills and manage his own finances, shop, perform activities of self-care and personal hygiene, and manage his own medical care by going to doctor's appointments and taking medications.  (R. at 18, 20.) Importantly, "Fourth Circuit precedent does not suggest that ALJs should ignore objective evidence such as this; instead, *Shelley C.* and *Arakas* prevent ALJs from requiring claimants to provide medical evidence that would be impossible to produce given their specific medical conditions."  *Anthony P. v. O'Malley*, 1:22-cv-291, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024) (finding that the ALJ "did not discount Plaintiff's subjective complaints [in violation of *Arakas* and *Shelley C.*] simply because the complaints were not corroborated by the record's medical evidence.  Rather, … the ALJ here looked at multiple factors in evaluating Plaintiff's symptoms, including Plaintiff's own statements, his robust daily life activities, and his treating provider's observations.").  This constitutes substantial evidence supporting the ALJ's decision. While Plaintiff disagrees and provides a bullet-point list of examples that support his subjective complaints (Pl.'s Mem. at 10-12), the Court must abstain from reweighing conflicting evidence or substituting its judgment for that of the ALJ.  *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.

Because the ALJ did not reject Plaintiff's statements regarding the intensity of his symptoms based on the absence of objective evidence, the ALJ followed the regulations in reaching the RFC determination, and substantial evidence supports that determination.

2. *Substantial Evidence Supports the ALJ's RFC Determination, Including Limitations Pertaining to Plaintiff's Ability to Concentrate, Persist and Maintain Pace*

Plaintiff next argues that the RFC determination fails to include sufficient limitations for concentration, pace, and persistence given the "combined effects of [Plaintiff's] PTSD and depression" which cause him "to be intermittently incapacitated." (Pl.'s Mem. at 12-14.)  The ALJ reasonably accounted for Plaintiff's limitations stemming from his mental impairments, specifically finding that they cause mild to moderate limitations in understanding, interaction, and concentration and structuring the RFC accordingly.  (R. at 18-21.)

Regarding Plaintiff's ability to concentrate, persist, and maintain pace, the ALJ found moderate limitations based on Plaintiff's contention that he had difficulty concentrating and focusing generally, following instructions, completing tasks, and avoiding distractions and his stated abilities to prepare meals, manage funds, and handle his own medical care.  (R. at 18.)  The ALJ also found no indication in the record of any acute exacerbations of Plaintiff's symptoms which required inpatient hospitalization or other emergency treatment.  (R. at 20.)  Instead, function reports and treatment records show that Plaintiff "retain[ed] his general independence aside from an inability to drive comfortably," and examinations showed normal mental status with occasional impairments in mood or concentration.  (R. at 20.)  Among other restrictions, the RFC in turn limited Plaintiff to "understand[ing], remember[ing], and carry[ing] out simple instructions and mak[ing] simple work related decisions," "work[ing] at a consistent pace throughout the workday, but not at a production rate pace where tasks must be performed quickly," and "tolerat[ing] occasional interaction with coworkers and supervisors, with no public contact or

tandem work tasks." (R. at 19.) This RFC reasonably accounted for Plaintiff's limitations related to persistence, concentration, and pace as found by the ALJ.[6]

Plaintiff argues that the ALJ should have afforded more weight to his subjective complaints regarding the limiting effects of his condition. (Pl.'s Mem. at 12-13.) But as discussed above, *infra* Part IV.B.1, substantial evidence supports the ALJ's findings, and this Court cannot reweigh the conflicting evidence identified by Plaintiff and already considered by the ALJ. *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.

### C. The ALJ Applied Correct Legal Standards in Evaluating Dr. Koako's Opinion, and Substantial Evidence Supports the ALJ's Findings

*1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017*

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. This framework applies in Plaintiff's case. (*See* R. at 15.) The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source. 20 C.F.R. § 404.1520c(a)-(b).

---

[6] Plaintiff cites *Rose v. Saul* to argue otherwise. No. 7:19-cv-91, 2020 WL 4740479, at *4 (E.D.N.C. Aug. 14, 2020). (Pl.'s Mem. at 12-14.) That case is distinguishable. The *Rose* court found that the record evidence therein established the plaintiff as intermittently incapacitated, yet the ALJ's decision contained "no finding or discussion about his ability to perform . . . work with any regularity or consistency." *Id.* at *4.

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. § 404.1520c. Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* § 404.1520c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* § 404.1520c(b)(2).

A medical opinion is a "statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations or restrictions" in listed work-related abilities. 20 C.F.R. § 404.1513(a)(2)(i)-(iv). There is no requirement that the ALJ point to every specific piece of evidence in adopting or rejecting a medical opinion as persuasive. *See Owens v. Kijakazi*, 2023 WL 2344224, at *3 (4th Cir. 2023). Rather, the ALJ is required to fashion a sufficient narrative to facilitate meaningful review. *Id.* Additionally, the "ALJ need not necessarily use the words 'supportability' or 'consistency,' as

long as the ALJ still performs the requisite analysis of these factors." *Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021).

　　*2. Dr. Koako's Medical Opinion*

　　On April 6, 2022, Dr. Koako completed a Mental Residual Functional Capacity Assessment for Plaintiff.  (R. at 1464-68.)  Therein, Dr. Koako opined that pertaining to understanding and memory, Plaintiff was markedly limited in both the ability to remember locations and work-like procedures and the ability to understand and remember detailed instructions, but moderately limited in the ability to understand and remember very short and simple instructions.  (R. at 1464.)

　　Pertaining to sustained concentration and persistence, Dr. Koako noted that Plaintiff had marked limitations in: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruptions from his psychological symptoms and perform at a consistent pace without an unreasonable number and length of breaks.  (R. at 1464-65.)  Dr. Koako found that Plaintiff had moderate limitations in the ability to carry out very short and simple instructions and the ability to make simple work-related decisions.  (R. at 1464.)

　　For social interaction, Dr. Koako opined that Plaintiff had marked limitations in the ability to interact appropriately with others, the ability to get along with coworkers or peers without distracting them or exhibiting "behavioral extremes," and the ability to maintain socially-acceptable behavior and adhere to basic standards of cleanliness, and moderate limitations in the

ability to ask simple questions or ask for assistance and in the ability to accept instructions and respond appropriately to supervisor criticism.  (R. at 1465.)

Lastly, in the realm of adaptation, Dr. Koako found that Plaintiff had marked limitations in the ability to be aware of normal hazards and take appropriate precautions and in the ability to set realistic goals or make plans independently.  (*Id.*)  Dr. Koako stated that Plaintiff had moderate limitations in the ability to respond appropriately to changes in the work setting and in the ability to travel to unfamiliar places and use public transportation.  (*Id.*)

Dr. Koako then provided a handwritten summary, in which he stated that Plaintiff was a "disabled veteran, with [a] history of PTSD, major depression, obstructive sleep apnea, arthritis, low back pain is seeking help to address his mental [RFC] assessment for extensive medical review…"  (R. at 1467.)  Summarizing his findings, Dr. Koako noted that Plaintiff's "overall mental and physical problems including PTSD, depression, obstructive sleep apnea, [and] arthritis, are affecting his performance to perform and sustain activity over a normal workday and work week on a[n] ongoing basis."  (*Id.*)  He stated:

> After [r]eviewing the medical records and talking to the patient, all in all, the patient appears to have marked limitations for the most part in his functional capacity.  His history of PTSD with flashbacks is affecting his concentration, attention and preventing him from carrying out his work day duties and tasks along with depression and poor adaptability with coworkers and that workplace.  This is aggravated b[y] obstructive sleep apnea and its effect on him being sluggish and sleepy during the daytime despite using CPAP machine at night.  Furthermore arthritis in the multiple joints and his lower back pain is adding physical limitations on top of his mental functional capacity.

(R. at 1467-68.)

On April 20, 2022, Dr. Koako completed a personal statement regarding Plaintiff's medical conditions.  (R. at 1596.)  Therein, Dr. Koako noted Plaintiff's history of chronic PTSD and reports of cognitive limitations, including disorientation and memory issues.  (*Id.*)  According to Dr.

Koako, "[f]unctionally, [Plaintiff] exhibits significant impairment in most areas" including an inability to cook (namely eating only sandwiches) and depends on others to shop for food but can talk on the telephone. (*Id.*) Plaintiff "describes his psychiatric symptoms in terms of stress, fear, guilt, anxiety, and depression, which affects his ability to take care of his personal needs." (*Id.*) He expressed difficulty managing his finances independently and cannot drive. (*Id.*) "Socially," Plaintiff "has troubled relationships and has no friends." (*Id.*) Plaintiff reported anger issues in the past, and "frequently experiences suicidal ideation and psychotic symptoms that contribute to very difficult interactions with others." (*Id.*) Further, Dr. Koako noted that Plaintiff's "representation of managing his behavior is not accurate." (*Id.*) Finally, Dr. Koako stated that Plaintiff has been "unable to sustain any employment for a significant period of time due to the severity of his impairments." (*Id.*)

### 3. The ALJ Did Not Err in His Analysis of Dr. Koako's Opinion

Plaintiff argues that the ALJ failed to address the 20 C.F.R. § 404.1520c factors, and "limited his discussion of this regulation to say he 'considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.'" (Pl.'s Mem. at 15.) A review of the ALJ's decision shows otherwise.

As an initial matter, to the extent Plaintiff contends that the ALJ erred by not addressing each of the 20 C.F.R. § 404.1520c factors (Pl.'s Mem. at 14-15), the regulation explicitly provides that the ALJ may, but is not required, to explain how factors other than supportability and consistency were considered. *Id.* § 404.1520c(b)(2). The ALJ complied with the regulation in assigning weight to Dr. Koako's medical opinion by addressing supportability and consistency.

Regarding supportability, the ALJ found that Dr. Koako's conclusions "appear to be based on the claimant's statements regarding his limitations, not based on objective examination of"

Plaintiff. (R. at 22.) While Dr. Koako vaguely refers to an "extensive medical review" and states he "[r]eview[ed] the medical records and talk[ed] to the patient," he does not reference "objective medical evidence" or provide other "supporting explanations" for his conclusions. 20 C.F.R. § 404.1520c(c)(1). Instead, Dr. Koako's explanation largely repeats the opined limitations. (*See* R. at 1467-68.)

Regarding consistency, the ALJ found that Dr. Koako's opinion was generally inconsistent "with the mental status examinations in the record, which do not establish ongoing limitations at a marked level despite treatment and instead indicate that [Plaintiff's] condition is generally stable with treatment." (R. at 22.) Indeed, Drs. Leizer and Montgomery found that Plaintiff had no marked limitations, and only moderate limitations. The ALJ found the opinions of Drs. Leizer and Montgomery to be persuasive. (R. at 21.)

The ALJ complied with the regulations in weighing Dr. Koako's opinion. Substantial evidence supports the ALJ's rejection of Dr. Koako's opinion as lacking support and inconsistent with these other record evidence and medical opinions. Therefore, the Court finds no error in this analysis.

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF Nos. 11, 12), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 16), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/ 

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 28, 2024